**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000476
20-MAY-2021
07:57 AM
Dkt. 66 SO**

NO. CAAP-20-0000476

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOHN HENRY DECAMBRA, JR., Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-19-000722)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant John Henry Decambra, Jr. (**Decambra**) appeals from the Judgment; Conviction and Sentence, filed on June 30, 2020, in the Circuit Court of the Second Circuit (**Circuit Court**).[1] After pleading no contest pursuant to a plea agreement with Plaintiff-Appellee State of Hawai'i (**State**) Decambra was convicted of Assault in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(a) (Supp. 2016), and Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243(1) (2014). Decambra was sentenced to a five-year term of imprisonment for each charge, to run concurrently.

On appeal, Decambra contends that the State "breached the plea agreement by arguing for a sentence of imprisonment of more

---

[1] The Honorable Kelsey T. Kawano presided.

than one year," and that his counsel was ineffective for failing to object to the breach of the plea agreement at sentencing.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Decambra's points of error as follows, and vacate and remand for resentencing.

The pertinent background is as follows. The plea agreement in this case was set forth in Decambra's Change of Plea form, which stated:

> I request that I shall be placed on a four year term of probation, with the State reserving the right to argue for one year of jail subject to early release into a drug treatment program as may be approved by Adult Client Services, and that I request no more than six months of jail . . . .

Preliminarily, we note that HRS § 706-624(2)(a) (2014), "Conditions of Probation," authorizes a "term of imprisonment to be determined by the court at sentencing . . . not exceeding one year in Class C felony cases," as a condition of probation. The two offenses Decambra pled to were both Class C felonies. Thus, the agreement in this case contemplated a sentence of probation with the only difference in the parties' positions being the amount of jail time imposed as a discretionary condition of probation.

At sentencing, the State made the following argument in response to the court's inquiry as to the State's "position" on "the plea agreement:"

> THE COURT: . . . .
>
> What's the State -- does the State have anything to add with regard to its position and the plea agreement?
>
> [PROSECUTOR]: Ah, you Honor, ah, we will ultimately defer to the Court in regards to the imposition of a further jail sentence.
>
> Ah, due to that he has substantial credit, ah, the State defers to the Court to weigh that against the violent nature of this attack which was basically a hammer to the face. I mean it landed in his mouth.

2

> Ah, which is a -- <u>an act of pretty extreme violence</u>, because he armed himself with a weapon in anger. Ah, and attacked [the victem], um, by striking him in the head, ah, in the facial area with the hammer.
>
> Ah, <u>that is not to be tolerated</u> and I know we're in special circumstances now. Um, <u>and the State, at this point, will further defer to the Court and the information in the presentence investigation report</u>.

(Emphases added). We note that, although defense counsel had briefly mentioned the plea agreement, the State said nothing about the plea agreement, and did not reaffirm or place its terms on the record, i.e., that the parties agreed to a probation sentence with a maximum of one year incarceration with an early release provision, as a condition of probation.

The Circuit Court explained its reasoning in sentencing Decambra to concurrent five-year prison terms for the offenses, as follows:

> THE COURT: All right. Thank you.
>
> So in reviewing that police report that was included in the PSI, together with all of the background information, ah, the Court is struck by the viciousness of your attack.
>
> Um, [the prosecutor] refers to it as a hammer. Um, the police reports refer to it as a small hatchet. And that you went at the victim, hatcheted his head, causing him to have two front upper teeth knocked loose. And treated about the head for facial trauma with philtrum complex laceration, which is basically a hatchet gash.
>
> That strikes the Court as a severe act of violence. The Court's view is that you are a dangerous person. And I -- I appreciate the fact that you did admit to striking the victim and that you did say you needed to be held accountable.
>
> You have an extensive criminal record. The Court also has taken into account your inability to follow court directives when placed on probation.
>
> The Court believes that all matters considered, a prison sentence is appropriate at this time. And that, ah, probation sentence to allow you to remain in the community while you attempt to do services would not be in the best interest of the public safety.
>
> Accordingly, the Court hereby will proceed with sentencing in Case 2CPC-19-000722, count one, five years indeterminant [sic] sentence of imprisonment. Count two, five

years indeterminant [sic] sentence -- sentence of imprisonment to run concurrently.

Decambra contends the State breached the plea agreement by arguing for a sentence greater than one year, contrary to the terms of the plea agreement, and that such breach amounted to plain error. Decambra points to the State's in-court descriptions of the assault as an extreme act of violence and of the violent nature of the attack with a hammer which he armed himself with, in anger. Decambra argues that this constituted an indirect attempt to influence the Circuit Court to impose a sentence of more than one year, after the State had promised not to do so. Decambra also contends the error was not harmless because the Circuit Court relied upon the State's argument in sentencing him to five years imprisonment when it noted the viciousness of the assault and described it as an act of severe violence.

The State contends that Decambra waived the alleged breach of the plea agreement by failing to object during sentencing or filing a motion to reduce his sentence pursuant to Rule 35 of the Hawaiʻi Rules of Penal Procedure (**HRPP**). The State responds that it did not expressly or impliedly breach the plea agreement because it merely referenced relevant sentencing factors and ultimately deferred to the Circuit Court as to whether Decambra should receive a further jail sentence beyond the 158 days he had served. The State contends Decambra should have reasonably expected the State to argue for a further jail sentence when the State reserved its right to argue for one year of jail in the plea agreement. The State justifies its reference to the violent nature of the assault as an attempt to address the nature and circumstance of the offense under HRS § 706-606 (2014)[2] and to describe the seriousness of the offense. The

---

[2]    HRS § 706-606 states:

**§706-606  Factors to be considered in imposing a sentence**. The court,

4

State further notes the plea agreement did not require the State to request one year of jail and it did not do so.  The State claims the plea agreement "did not contain any terms limiting the type of sentencing arguments the State could make."  Lastly, the State urges that "as a matter of policy, adopting Decambra's position under these circumstances would discourage similar plea agreements by creating a virtually impossible standard for the State to meet," because it would, "in essence, prevent the State from making arguments regarding the nature and circumstances of an offense for fear of breaching a similar plea agreement, which would ultimately discourage, to the detriment of future defendants, the State from offering similar agreements."

"[B]reaches of plea agreements provide appropriate bases for appellate review under the plain error standard, inasmuch as a breach implicates due process and the interests of justice."  State v. Miller, 122 Hawaiʻi 92, 101, 223 P.3d 157, 166 (2010) (internal quotation marks and citations omitted).  A defendant's "failure to raise the issue at sentencing or by HRPP Rule 35 motion does not preclude our review of the alleged error under the plain error doctrine."  Id.

"It is well settled that the terms of a plea agreement, which serve as the inducement for entering a plea, must be fulfilled."  State v. Adams, 76 Hawaiʻi 408, 414, 879 P.2d 513,

─────────────────

in determining the particular sentence to be imposed, shall consider:

(1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  The need for the sentence imposed:
   (a)  To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
   (b)  To afford adequate deterrence to criminal conduct;
   (c)  To protect the public from further crimes of the defendant; and
   (d)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)  The kinds of sentences available; and
(4)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

519 (1994) (citations omitted).

> The touchstone for determining whether a breach of a plea agreement has occurred, however, is whether the defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise.  This determination requires an inquiry into the precise meaning of the language of the agreement as it was understood by the defendant and defendant's legitimate expectations arising therefrom.
>
> Furthermore, a plea agreement containing terms that are ambiguous or reasonably susceptible to different interpretations is strictly construed in favor of the defendant.  Even where the state technically complies with every term, a breach of the plea agreement may be found if the spirit of the agreement is breached.

State v. Abbott, 79 Hawaiʻi 317, 320, 901 P.2d 1296, 1299 (App. 1995) (citations and quotation marks omitted).

The State contends that there was no breach where the State deferred to the Circuit Court for "a further jail sentence" and did not ask for more than a year of incarceration.  This contention is without merit.  In this case, the Circuit Court specifically asked the State regarding its position on the plea agreement.  The State never responded to the Circuit Court regarding the plea agreement.  The State never affirmed the existence of the plea agreement or its terms in response to the Circuit Court's direct question.  By not reaffirming and confirming the plea agreement, and arguing for unspecified "further jail" instead, the State did not fulfill the terms of the agreement.  See Adams, 76 Hawaiʻi at 414, 879 P.2d at 519.

Under the express terms of the agreement, Decambra had reasonable grounds to rely on the State's promise to ask for a probation sentence with a maximum one-year incarceration probation condition, subject to early release to a program approved by probation.  See Abbott, 79 Hawaiʻi at 320, 901 P.2d at 1299.  In this case, the Circuit Court had the option to sentence Decambra to a five-year indeterminate prison term for each charge.  HRS §§ 707-711(2) (2014), 712-1243(2) (2014), and 706-660(1)(b) (2014).  Thus, the State was required to make it

clear to the Circuit Court that it supported the imposition of probation with the discretionary probation condition of maximum one-year incarceration with early release to a program, and not merely request a vague and potentially limitless "further jail sentence."  Rather than recommending the probation sentence the State had agreed to, the State instead "defer[red] to the Court in regards to the imposition of a further jail sentence" and argued the "violent nature of this attack."  This constituted a breach of the agreement.

The State also claims it "was required to cite facts and make arguments to justify the imposition of further jail time" by addressing the nature and circumstance of the offense under HRS § 706-606(1) and in describing the "seriousness of the offense" factor in subsection (2).  While the State was not precluded from making this argument under HRS § 706-606, once the State chose to present sentencing argument, it was required to present such argument within the boundaries of the plea agreement, which bound the State to request a probation sentence with a probation condition of maximum one-year incarceration with early release to a program.  However, the State only argued for additional incarceration and never said it had agreed to a probation sentence.  The Circuit Court's imposition of concurrent five-year prison terms, in light of this record, establishes that Decambra relied to his detriment on the State's promise to support a probation sentence with a potential maximum incarceration term of one year as a probation condition.  See id.

The breach of the plea agreement was not harmless beyond a reasonable doubt.  Decambra was prejudiced by foregoing his constitutional rights and pleading no contest in reliance on the State's promises to argue for a probation sentence with certain probation terms.  See Miller, 122 Hawaiʻi at 127-28, 223 P.3d at 192-93.  Where a plea is based on an unfulfilled promise, there is certainly a reasonable possibility that the error might have contributed to the conviction, inasmuch as the conviction

rests entirely on Decambra's plea.  Id. at 128, 223 P.3d at 193 (citing State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006)).  The record shows that Decambra was prejudiced because the State's arguments about "the violent nature of this attack," as "an act of pretty extreme violence," appear to have influenced the Circuit Court's decision to impose an indeterminate sentence, because the Circuit Court made similar statements that "the court is struck by the viciousness of your attack," and remarked that the injury "strikes the Court as a severe act of violence."

Either resentencing or withdrawal of a plea may be the appropriate remedy depending on the defendant's particular circumstances.  Adams, 76 Hawaiʻi at 414, 879 P.2d at 519.  "[Res]entencing by another judge is the proper remedy in such a case."  State v. Anderson, 4 Haw. App. 102, 114, 661 P.2d 716, 724 (1983).  The court should give considerable weight to the choice of the defendant.  Adams, 76 Hawaiʻi at 414, 879 P.2d at 519.  Decambra requests this court to "vacate his judgment and remand to the circuit court for resentencing before a different judge."  Because Decambra has not sought to withdraw his no contest plea and instead requests resentencing, we remand for resentencing before a different judge.  See Abbott, 79 Hawaiʻi at 321, 901 P.2d at 1300 (remanding for resentencing before a different judge "[b]ecause Defendant has not sought to withdraw his no-contest plea and instead requests resentencing before a new judge, and because Defendant's choice of remedies is entitled to great weight . . . .") (internal citation omitted).  Given our disposition of this case, we do not address Decambra's claim that his trial counsel was ineffective.

Therefore, IT IS HEREBY ORDERED that the Judgment; Conviction and Sentence, filed on June 30, 2020, in the Circuit Court of the Second Circuit, is vacated with respect to the

sentence, and we remand for resentencing before a different judge, consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaii, May 20, 2021.

On the briefs:

Cynthia A. Kagiwada
for Defendant-Appellant

Gerald K. Enriques
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge